UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DAVIDA WOODGER,

       Plaintiff,

v.

TAYLOR CHEVROLET, INC.,

       Defendants.

_____/

Civil Action No.
14-cv-11810

HON. MARK A. GOLDSMITH

**OPINION AND ORDER (i) DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (Dkt. 19) AND (ii) DISMISSING PLAINTIFF'S CLAIM UNDER THE MICHIGAN CONSUMER PROTECTION ACT (COUNT III) WITHOUT PREJUDICE**

## I.  INTRODUCTION

This is a case regarding an inaccurate odometer disclosure statement, with claims brought pursuant to the Motor Vehicle Information and Cost Savings Act, 49 U.S.C. § 32701, et seq. ("Federal Odometer Act") (Count I), as well as Michigan's odometer disclosure statute, Mich. Comp. Laws § 257.233a (Count II), and the Michigan Consumer Protection Act ("MCPA"), Mich. Comp. Laws § 445.901, et seq. (Count III).  The parties agree that Defendant Taylor Chevrolet, Inc. ("Taylor") sold Plaintiff Davida Woodger a used vehicle, and that Taylor provided an inaccurate odometer disclosure statement during the sale; the statement reflected approximately 10,000 less miles than were actually attributable to the vehicle.  However, the parties disagree whether Taylor can be held liable for this error.

The discovery period has ended.  Taylor filed a motion for summary judgment (Dkt. 19), Woodger filed a response (Dkt. 28), and Taylor filed a reply (Dkt. 31).  The Court heard oral

argument on May 21, 2015, and took the matter under advisement. Pursuant to a subsequent Order, the parties then submitted supplemental briefing (Dkts. 37, 38). Because the Court concludes that a genuine issue of material fact exists regarding the "intent to defraud" requirement for Woodger's odometer act claims, the Court denies Taylor's motion for summary judgment. However, because Woodger's claim under the MCPA raises a novel and complex issue of Michigan law, the Court dismisses this claim without prejudice, pursuant to 28 U.S.C. § 1367(c).

## II. BACKGROUND

The facts of this case are largely undisputed, although the inferences to be drawn therefrom are contested. On October 11, 2013, Taylor acquired a 2011 Nissan Murano from a customer as part of a trade. Def. Br. at 1; Pl. Resp. at 4. The vehicle had 56,160 miles on it, which was reflected on an odometer disclosure statement. Def. Br. at 1; Pl. Resp. at 4; see also 10/11/2013 Odometer Disclosure Statement (Dkt. 19-2).

At the time of the trade, the vehicle's information — including the mileage — was entered into Taylor's data management system. Def. Br. at 1; Pl. Resp. at 4. It is the job of the title clerk — in this case, Erica Anderson — to take the mileage off the vehicle and put it into the data management system. Def. Br. at 1; Pl. Resp. at 4.

Taylor subsequently submitted an application for title and registration for the vehicle to the State of Michigan. See Application (Dkt. 19-6). On the application, Taylor listed the odometer mileage as "46,160" — 10,000 miles less than when the vehicle was obtained by Taylor. Id. The box in which this mileage was listed warns, "The odometer mileage reading must match the mileage reading disclosed to the purchaser on the title and/or mileage statement." Id. The State of Michigan subsequently issued a certificate of title reflecting a mileage of 46,260. See Certificate of Title (Dkt. 19-7).

Woodger purchased the vehicle from Taylor on November 8, 2013. Id. The odometer disclosure statement that Woodger was provided reflected an odometer mileage of 46,260. See 11/8/2013 Odometer Disclosure Statement (Dkt. 19-8). This same mileage was placed on the assignment of the title. See Certificate of Title (Dkt. 19-7). Both parties agree that this mileage was incorrect, and that the correct mileage was approximately 56,160 miles. See Def. Br. at 1-2; Pl. Resp. at 4-6; Def. Reply at 1-2.

At some point during the sale negotiations with Woodger, Taylor's sales agent obtained a copy of a CARFAX report, which discloses reported information about a car's history. Pl. Resp. at 6-7; Def. Reply at 2; see also T. Schiftar Dep. at 10:10-15 (Dkt. 28-6). The agent showed the report to Woodger, who signed a document acknowledging having been offered the opportunity to see and review the report. Pl. Resp. at 6-7; Def. Reply at 2; see also D. Woodger Dep. at 31:10-33:6 (Dkt. 28-2). Woodger claims that the report the sales agent obtained revealed the mileage discrepancy, but that she was not permitted to review the report in detail or keep it after the sale. Pl. Resp. at 7; see also D. Woodger Dep. at 31:10-33:6.

Woodger brought the vehicle back to Taylor a few days later for the replacement of tires. Def. Br. at 2; Pl. Resp. at 5. At that time, the mileage discrepancy came to the parties' attention. Def. Br. at 2; Pl. Resp. at 5. The parties were unable to resolve the matter informally, Def. Br. at 2; Pl. Resp. at 5, and this lawsuit followed.

### III. SUMMARY JUDGMENT STANDARD

A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When a defendant seeks summary judgment, the defendant "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those

portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quotation marks omitted). "[T]he plaintiff must present affirmative evidence in order to defeat a properly supported motion for summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257 (1986). A mere scintilla of evidence is insufficient; rather, "there must be evidence on which the jury could reasonably find for the [nonmovant]." Id. at 252.

> When evaluating the evidence on a motion for summary judgment,
>
> credibility judgments and weighing of the evidence are prohibited. Rather, the evidence should be viewed in the light most favorable to the non-moving party. Thus, the facts and any inferences that can be drawn from those facts must be viewed in the light most favorable to the non-moving party.

Biegas v. Quickway Carriers, Inc., 573 F.3d 365, 373 (6th Cir. 2009) (brackets and citations omitted).

## IV. ANALYSIS

Taylor raises two arguments in support of its motion for summary judgment. First, Taylor argues that both the federal and state odometer statutes require "intent to defraud" to hold a seller liable, and there is no evidence of such an intent with respect to the odometer statement here. Instead, Taylor suggests that this simply was a clerical error when the mileage was entered into the data management system. See Def. Br. at 4-7. Second, Taylor argues that its sale of the vehicle is exempt from the MCPA, because the sale is "specifically authorized under laws administered by a regulatory board or officer acting under statutory authority of this state" — in this case, the Michigan Motor Vehicle Code, the Secretary of State, and the Bureau of Regulatory Services. Id. at 8-10.

4

The Court first addresses Taylor's argument regarding an "intent to defraud." The Court concludes that a genuine issue of material fact exists regarding this element, and thus denies Taylor summary judgment on the odometer act claims. However, although the Court denies summary judgment on Counts I and II, the Court dismisses Woodger's MCPA claim (Count III) as raising a novel and complex issue of Michigan law, pursuant to 28 U.S.C. § 1367(c)(1).

**A. Whether Woodger Has Sufficiently Shown Intent to Defraud**

Woodger raises claims under both the federal and Michigan odometer statutes. Congress enacted the Federal Odometer Act, 49 U.S.C. § 32701, et seq., because consumers "rely heavily on the odometer reading as an index of the condition and value of a vehicle," and "are entitled to rely on the odometer reading as an accurate indication of the mileage of the vehicle." Id. § 32701(a). That statute provides, in relevant part, as follows:

> (a)(1) Under regulations prescribed by the Secretary of Transportation that include the way in which information is disclosed and retained under this section, a person transferring ownership of a motor vehicle shall give the transferee the following written disclosure:
>
> (A) Disclosure of the cumulative mileage registered on the odometer.
>
> (B) Disclosure that the actual mileage is unknown, if the transferor knows that the odometer reading is different from the number of miles the vehicle has actually traveled.
>
> (2) A person transferring ownership of a motor vehicle may not violate a regulation prescribed under this section or give a false statement to the transferee in making the disclosure required by such a regulation.

Id. § 32705(a). The National Highway Traffic Safety Administration has, in turn, promulgated regulations requiring the disclosure of odometer mileage and its accuracy. See 49 C.F.R. §§ 580.1, 580.2, 580.5(a), (c), (e).

5

The statute also permits enforcement by private parties through civil litigation, and sets forth the permissible relief: "A person that violates this chapter or a regulation prescribed or order issued under this chapter, with intent to defraud, is liable for 3 times the actual damages or $10,000, whichever is greater."   49 U.S.C. § 32710(a).   The statute further allows for recovery of costs and reasonable attorney fees.   Id. § 32710(b).

Michigan similarly regulates the provision of odometer mileage information upon selling a vehicle.   Michigan Compiled Laws § 257.233a provides, in relevant part, as follows:

> (1)   When the owner of a registered motor vehicle transfers his or her title or interest in that vehicle, the transferor shall present to the transferee before delivery of the vehicle, written disclosure of odometer mileage by means of the certificate of title or a written statement signed by the transferor including the transferor's printed name, containing all of the following:
>
> (a)   The odometer reading at the time of transfer not to include the tenths of a mile or kilometer.
>
>     \*    \*    \*
>
> (g)   One of the following:
>
>> (i)   A statement by the transferor certifying that to the best of his or her knowledge the odometer reading reflects the actual mileage of the vehicle.
>>
>> (ii)   If the transferor knows that the odometer reading reflects the amount of mileage in excess of the designed mechanical odometer limit, a statement to that effect.
>>
>> (iii)   If the transfer [sic] knows that the odometer reading differs from the mileage and the difference is greater than that caused by odometer calibration error, a statement that the odometer reading does not reflect the actual mileage and should not be relied upon.   This notice shall include a warning notice to alert the transferee that a discrepancy exists between the odometer and the actual mileage.

Mich. Comp. Laws § 257.233a(1).   Like its federal counterpart, the state statute also sets forth the

penalties for non-compliance: "A person who, with intent to defraud, violates any requirement under subsection (1) . . . is liable in an amount equal to 3 times the amount of actual damages sustained or $1,500.00 whichever is greater, and in the case of a successful recovery of damages, the costs of the action together with reasonable attorney's fees." Id. § 257.233a(15).

Both the federal and state statutes require an "intent to defraud." See 49 U.S.C. § 32710(a); Mich. Comp. Laws § 257.233a(15). Taylor argues that "there is absolutely no evidence of any intent to defraud on behalf of the Defendant and the facts clearly show a mistake on behalf of the dealership." Def. Br. at 5. Taylor suggests that, "it appears that the title clerk for the dealership made a mistake and accidentally entered the mileage for the Vehicle into the data management system as 46,160 instead of 56,160." Id. Taylor also asserts that "[i]t is not plausible that a class 'A' auto dealer in the state of Michigan would put its dealer license at risk to attempt to defraud the Plaintiff with respect to a 10,000 mileage discrepancy when the difference in value is negligible and only in the range of $575.00 to $776.00." Id. at 6-7.

Woodger responds that a question of fact exists as to Taylor's intent to defraud. Pl. Resp. at 9-16. Woodger first argues that, pursuant to Michigan Compiled Laws § 257.233a(14), Taylor's provision of a false odometer disclosure statement is prima facie evidence of a fraudulent act. Id. at 10. Woodger also argues that the "intent to defraud" requirement can be satisfied based on Taylor's failure to take steps to verify the accuracy of the disclosure statement. Id. at 11. In support of this argument, Woodger asserts that: (i) the CARFAX report at the time of the sale reflected a mileage discrepancy, but Taylor failed to investigate this issue; and (ii) Taylor's sales agent rushed Woodger through the sales transaction and did not print the CARFAX report or permit Woodger to examine it in detail, instead having her sign a waiver — as part of numerous other documents during the process — acknowledging that she had seen the report. Id. at 13-15.

7

A threshold issue exists regarding the proper interpretation of the phrase "intent to defraud" in the odometer statutes. Woodger suggests that the term goes beyond willful conduct, also encompassing a reckless standard, i.e., where the seller closes its eyes to a glaring deficiency. Indeed, Woodger claims that the "dealership's assertion that a clerical error occurred on the paperwork is not a legal excuse," because "the standard of review . . . is whether the transferor may have had reason to know of the mileage discrepancy." Pl. Resp. at 14 (emphasis removed).

The Sixth Circuit might well disagree with Woodger's interpretation for purposes of the federal statute. In Paul's Auto World v. Boyd, 881 F.2d 1077 (Table), 1989 WL 88484, at *2 (6th Cir. Aug. 7, 1989), the Sixth Circuit set forth the requirements for establishing liability under the predecessor to the current federal statute. The court concluded that the phrase "intent to defraud" requires a showing of a "'willful' act done with specific intent to deceive a purchaser of the mileage on a car." Id. This suggests that recklessness is not sufficient. See also Moss v. Farr Motor Co., Inc., 82 F.3d 418 (Table), 1996 WL 166734, *2 (6th Cir. Apr. 9, 1996) (uncertainty as to the accuracy of the odometer is insufficient; liability requires that the defendant knew the mileage on the odometer was false).

Even the authority Woodger cites in support of her reckless standard recognizes the Sixth Circuit's stricter "willful" requirement. In Haynes v. Manning, 917 F.2d 450, 453 (10th Cir. 1990), the Tenth Circuit joined the majority of courts in holding that "reckless disregard is sufficient to prove intent to defraud" for the federal odometer statute. In so holding, however, the Haynes court expressly rejected the position taken by the Eastern District of Tennessee — and affirmed by the Sixth Circuit — that "'intent to defraud' means 'to act willfully and with the specific intent to deceive any purchaser or potential purchaser of a motor vehicle who inspects the odometer of a motor vehicle as an index of the condition and value of such vehicle." Id. (citing

Shipe v. Mason, 500 F. Supp. 243, 245 (E.D. Tenn. 1978), aff'd, 633 F.2d 218 (Table) (6th Cir. Sept. 29, 1980)). At least one other district court in this circuit has similarly looked to Sixth Circuit law in concluding that a plaintiff's reliance on a gross negligence or reckless standard was not persuasive. See Scherber v. Online Auctions, LLC, No. 13-530, 2014 WL 3908114, at *3 (N.D. Ohio July 3, 2014). But see Nabors v. Auto Sports Unlimited, Inc., 475 F. Supp. 2d 646, 652 (E.D. Mich. 2007) (holding, without explanation, that "to show an intent to defraud under the Act, [the plaintiff] must show an intentional violation or that Auto Sports exhibited a reckless disregard for the truth as to the Jeep's mileage").[1]

Nevertheless, the Court need not resolve this issue, as Woodger has raised a genuine issue of material fact even at the higher "wilfull" level. Woodger's argument focuses almost exclusively on her allegations regarding the CARFAX report. In particular, Woodger claims that the report shown to her at the time of the sale revealed a mileage discrepancy, but that Taylor's agent rushed her through the sale and did not permit her to carefully review the report, which would have revealed the problem. Woodger asserts that the evidence can support a finding that the sales agent "noticed the mileage inconsistency, pushed through the sale despite the inconsistency, and intentionally withheld the CARFAX report from Plaintiff, knowing that there was a [mileage inconsistency] warning." See Pl. Supp. Br. at 3 (Dkt. 38); Pl. Resp. at 13-14.

In support of her claim, Woodger has provided a CARFAX report that was generated on or around December 4, 2013 — nearly a month after the sale. See CARFAX Report (Dkt. 28-5); see also Compl. ¶ 20 (Dkt. 1). This report contains an entry dated October 12, 2013, which reveals

---

[1] The Nabors court cited Jones v. Hanley Dawson Cadillac Co., 848 F.2d 803 (7th Cir. 1988) in support of its statement that a plaintiff under the federal odometer statute must show either an intentional or reckless violation; however, Jones held only that mere negligence was insufficient to establish an intent to defraud.

both a mileage of 46,160 and the following statement: "MILEAGE INCONSISTENCY[.] The mileage reported here conflicts with this vehicle's odometer history. Ask a mechanic or the seller to confirm the actual mileage – this entry may just be a clerical error." CARFAX Report (Dkt. 28-5); see also id. ("Odometer Check[.] Inconsistent mileage indicated."). Woodger claims the notifications in this report suffice for purposes of showing an intent to defraud, because they suggest that Taylor's agent knew or recklessly disregarded the mileage issue.

Although the CARFAX report that Woodger has provided was generated a month after the sale, the Court concludes that there is a genuine issue of material fact whether the report at the time of sale, i.e., November 2013, contained the same information. After the hearing on Taylor's motion, the Court ordered the parties to submit supplemental briefing setting forth any and all evidence regarding "[w]hether the [December 2013] CARFAX report . . . contained the same information — and, in particular, the 'Mileage Inconsistency' warnings on pages 2 and 4 of 5 of the report — at the time of the November 2013 sale." 7/28/2015 Order (Dkt. 36). Although Taylor filed a supplemental brief disputing whether the November 2013 report contained the actual "Mileage Inconsistency" warnings, Taylor appears to have conceded that the November 2013 report did state that there were approximately 46,000 miles on the vehicle. See Def. Supp. Br. at 2 (Dkt. 37) ("Plaintiff's pleading supports the fact that the CARFAX presented to Plaintiff showed 46,000 miles on the Vehicle and did not show any sort of mileage inconsistency."). Woodger similarly testified in her deposition that the CARFAX report she was shown at the time of the sale disclosed a mileage of 46,000. See D. Woodger Dep. at 30:16-31:1 (Dkt. 28-2).

The 46,160 mileage reading appears in the October 12, 2013 line entry on the report — the same line entry containing one of the "Mileage Inconsistency" warnings. While Taylor's counsel argued at the motion hearing that this entry was not added to the report until after the sale of the

vehicle to Woodger (a point he admitted was not in the record), see Rough Tr. at 15-18, this is belied by Taylor's most recent briefing, in which Taylor sets forth that Woodger's complaint supports "the fact that the CARFAX presented to Plaintiff showed 46,000 miles on the Vehicle." (Emphasis added). Therefore, given that Taylor now appears to concede that the October 12, 2013 entry showing 46,160 miles appeared on both the November 2013 and December 2013 reports, the Court concludes that, taking all inferences in Woodger's favor, the evidence supports a finding that the "Mileage Inconsistency" warning that is included in that same line entry was on both reports as well. This is a logical conclusion, given that the "Mileage Inconsistency" warning likely resulted from the discrepancy between the October 12, 2013 entry (46,160 miles), and the September 21, 2013 entry immediately preceding it (55,319 miles).

The Court also finds that a genuine issue of material fact exists regarding Taylor's knowledge about the mileage issue. Taylor's sales agent testified that he gave Woodger a "clean CARFAX, no accidents, no damage." T. Schiftar Dep. at 10:14-15 (Dkt. 28-6). This suggests that the sales agent at least reviewed the report prior to giving it to Woodger; otherwise, he could not have known that the CARFAX report revealed "no accidents, no damage." Id. And given that Taylor concedes that the November 2013 report revealed a mileage of 46,160, and the report showed a mileage of 55,319 directly above that, a reasonable factfinder could infer that the sales agent was aware of the mileage problem but did not correct the odometer disclosure statement, thereby potentially satisfying the "intent to defraud" requirement under either a "wilfull" or "reckless" standard.

Taylor's arguments in favor of summary judgment are not well taken. Taylor claims that this was nothing more than a clerical error committed by the title clerk. See Def. Br. 5-6. In support of this argument, Taylor highlights testimony that the title clerk ultimately was terminated

11

due to making mistakes.  Id.  Taylor also claims that it is "not plausible that a class 'A' auto dealer in the state of Michigan would put its dealer license at risk to attempt to defraud the Plaintiff with respect to a 10,000 mileage discrepancy when the difference in value is negligible and only in the range of $575.00 to $776.00."  Id. at 6-7.

While these arguments are appropriate for Taylor to make before the ultimate factfinder, they are premised on credibility determinations and disputed facts, which are inappropriate on summary judgment.  In light of the inferences that can be drawn from the evidence discussed earlier, as well as the fact that those inferences must be viewed in the light most favorable to Woodger at this time, the Court concludes that a genuine issue of material fact exists regarding Taylor's intent to defraud.  Summary judgment is, therefore, inappropriate.[2]

---

[2] In its supplemental brief, Taylor raises a new argument — that it cannot be liable for fraud based on the CARFAX report, because Woodger reviewed the report and, thus, "would have been on notice that representations regarding the mileage of the vehicle may have been inaccurate."  Def. Supp. Br. at 3-4.  This is an issue raised for the first time in Taylor's supplemental brief, and it goes beyond the bounds of the limited issue the Court asked the parties to address in supplemental briefing: whether the November 2013 report contained the same information as the December 2013 report.  See 7/28/2015 Order.  The Court, thus, refuses to consider this argument at this time.  See Trustees of the Painters, Union Deposit Fund v. G&T Comm. Coatings, Inc., No. 13-13261, 2014 WL 2743340, at *2-3 (E.D. Mich. June 17, 2014) (rejecting interpretation of a fringe benefit clause that was raised for the first time in a supplemental brief, because this was "far beyond the appropriate time to assert a new argument"); United Am. Healthcare Corp. v. Backs, 997 F. Supp. 2d 741, 747 (E.D. Mich. 2014); see also Howard v. Pierce, 738 F.2d 722, 723 n.2 (6th Cir. 1984) (refusing to consider argument raised for the first time in a reply brief).

Moreover, Taylor cites The Mable Cleary Trust v. The Edward-Marlah Muzyl Trust, 686 N.W.2d 770, 783 (Mich. Ct. App. 2004), in support of its claim that it cannot be liable if Woodger was "either presented with the information and chose to ignore it or had some other indication that further inquiry was needed."  Def. Supp. Br. at 3.  However, in Titan Insurance Co. v. Hyten, 817 N.W.2d 562 (Mich. 2012), the Michigan Supreme Court held that to the extent Mable Cleary Trust "can be read to support the proposition that a party has an independent duty to investigate and corroborate representations, we overrule Mable Cleary Trust."  Id. at 555, n.4.

In addition, Woodger alleges that although she was shown the report, she was not permitted to examine it or keep a copy of it.  See D. Woodger Dep. at 31:2-4.  Viewing all inferences in

Accordingly, the Court denies Taylor's motion as to Counts I and II, the federal and Michigan odometer act claims, respectively.[3]

### B. The MCPA Claim

Although the Court denies Taylor's motion for summary judgment on Woodger's claims under the federal and Michigan odometer acts, the Court dismisses Woodger's claim under the MCPA (Count III) without prejudice. The parties dispute whether this sales transaction, and thus Taylor, is exempt from MCPA liability in this case. Taylor cites broad language from a Michigan Supreme Court decision, as well as language from Justice Cavanagh's separate opinion in that case, in support of its position that the MCPA cannot apply. Def. Br. at 8-10 (citing Smith v. Globe Life Ins. Co., 597 N.W.2d 28 (Mich. 1999)). Woodger responds by citing an older Michigan Court of Appeals decision. See Pl. Resp. at 16-19 (citing McRaild v. Shepard Lincoln Mercury, 367 N.W.2d 404 (Mich. Ct. App. 1985)).

Taking Taylor's theory to its logical conclusion, any transaction that is in any way regulated by a governmental board or officer acting under statutory authority, even minimally,

---

Woodger's favor, a reasonable factfinder could conclude that this was because the sales agent knew of the mileage issue in the report and did not want Woodger to see it, as described above. This would undermine Taylor's suggestion that Woodger was adequately presented with information that she chose to ignore.

[3] Woodger relies on Michigan Compiled Laws § 257.233a(14) to support her argument that a false odometer statement is prima facie evidence of a fraudulent act, but this is a red herring. Pl. Resp. at 10. That provision establishes that a false statement can constitute prima facie evidence of a fraudulent act for purposes of section 249, which deals with the Secretary of State's authority to deny, suspend, or revoke a dealer's license if the Secretary finds that the "[t]he applicant or licensee has been guilty of a fraudulent act in connection with selling . . . vehicles of a type required to be registered under this act." See Mich. Comp. Laws § 257.249(d). Michigan Compiled Laws § 257.233a(14) says nothing about establishing prima facie evidence of fraud for purposes of section 257.233a(15) — the provision establishing civil liability for a violation that was committed with "intent to defraud." Nevertheless, given the actual evidence discussed above, the Court finds that summary judgment is not appropriate.

would be wholly exempt from the MCPA. Such a far reaching interpretation could, potentially, eviscerate the protections the statute was designed to provide. This complex and novel issue requires interpreting the scope of an important state statute and a Michigan Supreme Court decision's discussion of that statute, which the Court believes would best be addressed by Michigan's courts, particularly given the parties' cursory briefing on this issue before this Court. Therefore, the Court declines to exercise supplemental jurisdiction over this claim, and dismisses it without prejudice. See 28 U.S.C. § 1367(c)(1).

## V. CONCLUSION

For the foregoing reasons, the Court denies Defendant Taylor's motion for summary judgment (Dkt. 19) regarding Counts I and II, but dismisses Count III without prejudice.

The Court will issue an amended scheduling order setting new dates for the settlement conference, final pretrial conference, and trial, as well as due dates for the final pretrial order and non-dispositive motions. All other aspects of the Court's Case Management and Scheduling Order remain in effect (Dkt. 8).

SO ORDERED.


Dated: August 25, 2015         s/Mark A. Goldsmith
Detroit, Michigan              MARK A. GOLDSMITH
                               United States District Judge


### CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on August 25, 2015.

                               s/Carrie Haddon
                               Case Manager